FINSTROM *v.* BALDWIN.

1. CANCELLATION OF INSTRUMENTS—DEEDS—BILL OF SALE—MENTAL COMPETENCY—UNDUE INFLUENCE—FRAUD—EVIDENCE.

    Evidence presented in administrator's suit to set aside deceased's deed and bill of sale of her property to man who had been taken into deceased's home when he was 14 years of age and remained there on the farm until after the death of the grantor *held,* not to have substantiated claim of mental incompetency of the deceased or undue influence or fraud by the defendant.

2. SAME—CONSIDERATION—MENTAL COMPETENCY—GIFTS.

    Whether or not there had been a lack of consideration for the conveyance of decedent's farm and bill of sale of her personalty *held,* immaterial in administrator's suit to set aside such transfers to defendant, where the grantor was fully competent to make gifts if she wished.

3. DEEDS—DELIVERY—RECORD—EVIDENCE—PRESUMPTION.

    Claim that valid delivery of deed of decedent's farm to defendant had not been effected *held,* without merit in administrator's suit to set it aside, where such issue was first raised on appeal, was not substantiated by the record and presumption of delivery attached, where deed was recorded by decedent's long-time friend and mentally competent grantor lived some 11 months after the deed was recorded (CL 1948, § 617.20).

4. COSTS—BRIEFS.

    No costs are allowed, where decree is affirmed but appellee did not file a brief.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 9 Am Jur, Cancellation of Instruments §§ 16, 17, 20, 22.
[2] 9 Am Jur, Cancellation of Instruments § 24.
[3] 16 Am Jur, Deeds § 381.
[4] 14 Am Jur, Costs § 92.

Appeal from Missaukee; Campbell (Howard L.), J. Submitted April 15, 1959. (Docket No. 64, Calendar No. 47,658.) Decided June 6, 1959.

Bill by Harry M. Finstrom, administrator of the estate of Carrie B. Langworthy, deceased, against Carl H. Baldwin to set aside conveyance of real estate and transfer of personalty. Bill dismissed. Plaintiff appeals. Affirmed.

*George L. McBath,* for plaintiff.

SMITH, J. The efforts here made by plaintiff was to set aside a deed, and later bill of sale, executed by Carrie B. Langworthy, now deceased, hereinafter termed the grantor. The grounds alleged were lack of consideration, lack of mental capacity on the part of the grantor, and the exercise of fraud, undue influence and deceit on the part of the grantee, defendant herein, Carl H. Baldwin.

The facts were thus summarized by the trial chancellor:

"It is plaintiff's proofs that defendant was taken into the home of Carrie B. Langworthy, when he was a young man, about 12 or 14 years of age. That he did a man's work on the farm. He was paid for such labors. He was a resident of the farm when he was married. He took his bride home to the farm of Carrie B. Langworthy. He remained there until the death of Carrie B. Langworthy. He continues to reside there.

"Plaintiff further proved that on the 4th day of November, 1954, at about 10:30 o'clock in morning, defendant's wife went to the bedroom of decedent, to see if she needed any attention. She there found her on the floor. She was given assistance by being placed on a couch and then in bed. Mrs. Langworthy protested the efforts of her niece Nellie Billett, who had been called, to have a doctor called. The niece

called her husband from his place of employment in Cadillac. He insisted that a doctor be called regardless of the wishes of Mrs. Langworthy. Upon the arrival of Nuel Billett, husband of Nellie Billett, to the Langworthy residence, Mrs. Langworthy instructed him to call M. Louisa Wolcott, of Lake City, Michigan, and ask her to bring to her, Mrs. Langworthy, 2 blank quitclaim deeds and a blank will. Nuel Billett obeyed the instructions so given him, and drove to the home of M. Louisa Wolcott in Lake City, but did not find her at home, therefore he left the message for her with Miss Wolcott's home companion.

"Miss Wolcott answered the call and went to the home of Mrs. Langworthy. She carried with her blank deeds and a blank will.

"Her testimony, briefly stated, is that she had known Carrie Langworthy since 1920.

"I did business for her, and her sister Rose.

"Nuel Billett, called at my home and left word for me to come out to Carrie Langworthy's home, and bring 2 blank deeds and will. When I arrived at her home I went to her room and visited with her. She was perfectly rational. Her mind was as sound and clear as anyone's in this courtroom.

"Carrie said she wanted me to make a deed transferring her farm, and Rose's farm, to Carl, because he has been with her since he was 14 years old; that he was like a son to her.

"I asked her where the description of the property could be found. She said they were in the drawer, I did not want to open the drawer while I was alone with her, so I asked Mrs. Hamilton, mother of Carl's wife, to observe me when I went to the drawer. I got the papers in the drawer and gave them to Carrie. She sorted out the deeds having the proper descriptions and gave them to me. I prepared the deed. It was executed by her. Witnessed by 2 persons. Properly notarized. Shortly after that date, I stopped at her home, on my way to Cadillac, to visit with her briefly. At that time she asked if the deed

as prepared on November 4th included the personal property. I told her it did not. Thereupon, she requested that I prepare the necessary paper to give Carl all the personal property at once.

"I went to Lake City and got A. J. Spalding, an attorney residing at Lake City, to go with me to Mrs. Langworthy's home. Mrs. Langworthy told Mr. Spalding she wanted Carl Baldwin to have everything at once, including her bank account. A bill of sale was accordingly made, and properly executed.

"The testimony of attorney Spalding is equally convincing of the independent determination of Carrie B. Langworthy to transfer title to all her property *in praesenti* to Carl H. Baldwin.

"One of the witnesses, whose name appears on the deed, testified:

"I asked her before she signed the deed 'Are you sure this is the way you want it?' She said, 'Absolutely. Carl is a good boy, and I want him to have everything. I don't want him to have any trouble.' "

Some 8 days later the grantor also executed a bill of sale of additional property, also to defendant Baldwin. Over a year afterwards, on December 22, 1955, the grantor died. Action having been brought, upon grounds aforedescribed, by the administrator of Carrie Langworthy's estate, trial was held, the chancellor concluding that plaintiff "has failed to sustain or establish any of the material allegations of his bill of complaint."

Upon appeal it is urged that "the decree and opinion of the trial court [are] contrary to the law and facts, the equities therein, and against the weight of the evidence." We do not so regard it. The testimony adduced well justifies the chancellor's conclusion that:

"There is no evidence, in this case, even suggesting mental incompetence of Carrie B. Langworthy; neither is there any testimony which suggests that

she was influenced, in any manner, to make and execute the deed and bill of sale, by fraudulent practices, or deceit, or by defendant or anyone for and in his behalf."

As to the alleged lack of consideration for the conveyance and transfer, the point is immaterial. The grantor was fully competent to make gifts if she wished.

Appellant asserts, also, error with respect to the matter of delivery of the deed. This now-asserted issue was neither raised in the pleadings nor at the trial. It was first introduced in a brief filed by plaintiff after the proofs were closed. It is clear from the record that it is unsubstantiated. We have seen that the grantor sent for Louisa Wolcott to bring her 2 blank quitclaim deeds and a blank will. (Miss Wolcott, a former register of deeds of Missaukee county, had previously, and at various times since the 1920's, taken care of property transactions for the grantor.) After the execution of the deed, Miss Wolcott took it home with her, as she had done in previous transactions, and later, January 21, 1955, caused the deed to be recorded. The grantor did not die until the following December. Upon such record before us, and the presumption of delivery arising from the recording of the deed (*Weber* v. *Fitzpatrick,* 345 Mich 313; CL 1948, § 617.20 [Stat Ann § 27.869]), we are of the opinion that any question as to delivery is utterly without merit. There was thus no error in the trial chancellor's refusal of plaintiff's motion, made after decree entered, to "amend the bill of complaint to conform to the proofs therein, and grant a hearing or a new trial herein."

Decree affirmed. Since appellee has filed no brief in the Court, there will be no costs awarded.

Dethmers, C. J., and Carr, Kelly, Black, Edwards, Voelker, and Kavanagh, JJ., concurred.